(80 South. 417)

## WILEY FERTILIZER CO. v. CARROLL.
### (4 Div. 764.)

(Supreme Court of Alabama.   Nov. 28, 1918.)

1. RECEIVERS ☞151—POWERS OF RECEIVER— RESISTING CLAIMS.

While a receiver has no authority to question orders and decrees distributing burdens or apportioning rights between the parties to the suit, or any order or decree resting upon discretion of court appointing him, he may defend the estate in his possession against all claims which are antagonistic to the rights of both parties to suit.

2. BANKS AND BANKING ☞80(3)—RECEIVER —CLAIMS.

Receiver of insolvent bank could resist claim for fertilizers sold bank, on the ground that purchases were ultra vires; there being nothing to show that fertilizers were used in some legitimate way to carry out the lawful business of the bank within its chartered purposes and powers.

3. BANKS AND BANKING ☞80(3)—POWERS OF RECEIVER—RESISTING CLAIMS.

Receiver of insolvent bank may in resisting allowance of claim interpose any defense which the bank itself could have interposed.

4. CORPORATIONS ☞388(5) — ULTRA VIRES CONTRACTS—ESTOPPEL TO QUESTIONS.

A party to an ultra vires executory contract made with a corporation is not estopped to set up want of corporate capacity either by the fact of contracting or by the fact that the fruits or issues of the contract have been received or enjoyed.

Appeal from Circuit Court, Pike County; A. G. Seay, Special Judge.

Contest of claim between the Wiley Fertilizer Company and D. S. Carroll, as receiver of the Citizens' Bank of Goshen.   From decree overruling motion to dismiss the contest filed by the receiver and denying the claim, the claimant appeals.   Affirmed.

At the suit of the Hanover National Bank of New York, the Citizens' Bank of Goshen was declared insolvent, its assets were declared to be a trust fund, and D. S. Carroll was appointed receiver, with the usual powers.   The Wiley Fertilizer Company filed its claim in court for $8,156 due from the insolvent bank as the fair and reasonable value of fertilizers sold and delivered by appellant to the insolvent bank and by it disposed of.   The receiver contested this claim on the ground that the purchases of fertilizers by the bank was ultra vires the corporation, and the insolvent bank's charter showed only the usual powers of a banking corporation, and no power to deal in fertilizer.   The lower court sustained this contention.

C. C. Brannen, of Troy, for appellant.
John H. Wilkerson, of Troy, for appellee.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

SOMERVILLE, J. [1] Although the authorities agree that a receiver, who is but an arm of the court, has no authority to question orders and decrees of the court "distributing burdens or apportioning rights between the parties to the suit, or any order or decree resting upon the discretion of the court appointing him" (34 Cyc. 344, a; Cobbs, Rec., v. Vizard Co., 182 Ala. 372, 62 South. 730, Ann. Cas. 1915D, 801), it is equally well settled that a receiver "may defend the estate in his possession against all claims which are antagonistic to the rights of both parties to the suit" (34 Cyc. 343, 344, citing Lawson v. Dunn [N. J. Ch. 1901] 49 Atl. 1087; Bosworth v. Term. R. Ass'n, 174 U. S. 182, 19 Sup. Ct. 625, 43 L. Ed. 941). See, also, 2 Cyc. 641 (VI); Pom. Eq. Jur. (Eq. Rem. vol. 1) § 213.

The trial court did not err in overruling the motion to dismiss the contest.

[2] With respect to the receiver's assertion of the doctrine of ultra vires as against appellant's claim for the value of fertilizers sold to the insolvent, appellant presents two objections: (1) That the receiver does not represent the corporation in such sense as that he may disaffirm for it an ultra vires obligation; and (2) that the equitable doctrine of restitution or compensation must be applied in favor of a creditor whose money or property has been taken and used by and for the benefit of the corporation.

[3] 1. We think it is quite clear that the receiver may, in resisting the allowance of the claim filed against the insolvent, interpose any defense which the corporation itself could have interposed; necessarily so, for otherwise the right of defense would be utterly worthless, and, indeed, a mere contradiction of terms.

[4] 2. "It is thoroughly well-settled law that a party to an ultra vires executory contract made with a corporation is not estopped to set up the want of corporate capacity in the premises, either by the fact of contracting, whereby the power to contract is, in a sense, admitted or recognized, or by the fact that the fruits or issues of the contract have been received or enjoyed; and this though the assault upon the transaction comes from the corporation itself. Marion Savings Bank v. Dunklin, 54 Ala. 471; Chambers v. Falkner, 65 Ala. 448; Sherwood v. Alvis, 83 Ala. 115, 3 South. 307, 3 Am. St. Rep. 695; Chewacla Lime Works v. Dismukes, 87 Ala. 344, 6 South. 122, 5 L. R. A. 100; Long v. Ga. Pac. Ry. Co., 91 Ala. 519, 8 South. 706, 24 Am. St. Rep. 931.

Appellant concedes that this is, and always has been, the law in Alabama, but insists that the rigor of the rule has been qualified by the equitable doctrine announced in the much-quoted case of Allen v. Town of La Fayette, 89 Ala. 641, 8 South. 30, 9 L. R. A. 497, wherein the municipality was held liable in general assumpsit for the repayment of money loaned to it by the plaintiff, although the contract of borrowing was ultra vires of the corporation. In that case money was loaned by the plaintiff to the municipality for the purpose of buying a schoolhouse, and it was so used. The opinion asserted that the liability to the plaintiff was imposed by law, "not because the corporate authorities agreed to repay it to her, but because they have legitimately used it for the benefit of the town, in a way and to an end fully authorized by its charter."

In Bluthenthal v. Town of Headland, 132 Ala. 249, 31 South. 87, 90 Am. St. Rep. 904, the doctrine was recognized, with the same limitation, however, viz. that the money or property received by the municipality must have been devoted to the necessaries of the corporation. And again, in Mayor, etc., v. Hollingsworth, 170 Ala. 396, 402, 54 South. 95, 97, it is said that in such cases, "although no action may be had upon the express contract, still, where money or property has been received under the contract and *beneficially applied to authorized objects or purposes* under the law, an action of implied assumpsit may be had." (Italics supplied.)

The italicized words in the excerpt above quoted indicate the basis for this equitable exception to the general rule, and clearly restrict its application. The mere expedient of changing the form of the action from an express to an implied assumpsit, does not cut off the defense of ultra vires, for by that means the defense could always be completely destroyed.

As declared in Smith v. Ala., etc., Co., 4 Ala. 558, 568, ultra vires contracts "cannot be the foundation of any proceeding in a court of justice"; and again, in Chambers v. Falkner, 65 Ala. 448, 455, "no right of action can spring out of them"; and yet again, in Grand Lodge v. Waddill, 36 Ala. 313, 319, "no action to enforce the contract, whatever form the pleader's skill may give it, can be maintained."

Conceding, for the argument, that the fertilizers sold and delivered to the insolvent could have been used in some legitimate way to carry on the lawful business of the bank within its chartered purposes and powers, there is nothing in the record to show that they were thus beneficially used; and hence the case does not fall within the influence of the equitable rule in question.

We find no error in the record, and the decree of the chancery court will be affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and THOMAS, JJ., concur.